UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
KATURIA D'AMATO, individually and as
parent and natural guardian for ALFONSO and
LUCIANA D'AMATO, infants under the age
of 14 years,

                        Plaintiffs,

        -against-

ALFONSE D'AMATO; PARK STRATEGIES, LLC,
GASSMAN, BAIAMONTE, GRUNER, P.C.;
STEPHEN GASSMAN, ESQ.; JOSHUA GRUNER,
ESQ.; THE COUNTY OF NASSAU;
THE NASSAU COUNTY POLICE DEPARTMENT;
NASSAU COUNTY POLICE OFFICER VINCENT
ADAMO; NASSAU COUNTY POLICE OFFICER
JIMMY LEE; NASSAU COUNTY POLICE
SGT. JAMES LORENZEN; NASSAU COUNTY
POLICE DEPUTY INSPECTOR FRANCES BEIN;
NASSAU COUNTY DETECTIVE JASON HERNANDEZ,
NAMDI ODIAH, M.D.; RICHARD MURPHY, C.E.O. OF
SOUTH NASSAU COMMUNITIES HOSPITAL;
SOUTH NASSAU COMMUNITIES HOSPITAL;
JOSHUA KUGLAR, M.D.; STANLEY REDDY, M.D.;
MARK GREEN, ESQ.; HON. JOSEPH H. LORINTZ;
PATRICK RYDER, NASSAU COUNTY POLICE
COMMISSIONER; DAVID MACK, NASSAU COUNTY
DEPUTY POLICE COMMISSIONER; THE COUNTY
OF SUFFOLK; JAMES CASH; CATHERINE CASH;
DAVID SMITH, INTERNATIONAL INVESTIGATION
GROUP, LTD; DANIEL RIBACOFF, Individually and as
the Chief Operating Officer of INTERNATIONAL
INVESTIGATION, LTD.; LISA RIBACOFF,
Individually and as International Operations Manager of
INTERNATIONAL INVESTIGATION GROUP, LTD.;
SAUL ROTH; HON. MADELINE SINGAS, District
Attorney of Nassau County and SCHLISSEL, OSTROW
& KARABATOS, PLLC, all jointly and individually,

                        Defendants.
-----------------------------------------------------------------------X

COMPLAINT
(Plaintiff Demands Trial by
Jury)

1

Plaintiff, Katuria D'Amato, by her attorneys, the Law Offices of Thomas F. Liotti, LLC, as and for her complaint, alleges as follows:

## JURISDICTION

1.      The jurisdiction of this action is based upon the *United States Constitution* and the Civil Rights Law, 42 *U.S.C.* §§1981, 1983, 1985(1)(2) and (3), 1988, the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments of the United States Constitution and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory. Jurisdiction is founded upon 28 *U.S.C.* §§1331 and 1341(3) and (4), 28 *U.S.C.* §1343(a)(1)(2)(3) and (4) and the aforementioned Constitutional provisions and 42 *U.S.C.* ch. 126, §12101, the Americans With Disabilities Act of 1990 and 18 *U.S.C.* §§1961 *et. seq.* (§1964) and the Universal Declaration of Human Rights. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising out of state law pursuant to 28 *U.S.C.* §§1367(a) and 1376(a). It is alleged that these defendants have conspired together under color of the aforementioned New York State and federal laws to deprive this plaintiff of her civil and parental rights. The actions perpetrated by these defendants as herein described have abridged the privileges and immunities of the plaintiff and her children and have deprived her and them of life, liberty, property and the pursuit of happiness without due process of law; and have denied the plaintiff and her children the equal protection of the laws. It is further alleged that the actions of these defendants have discriminated against the plaintiff due to her gender and because she is a woman. See also, *Young v. Suffolk County, et. al.*, 705

F.Supp.2d 183 (E.D.N.Y. 2010) and *Lefaro v. Cardiothoracic Group*, 570 F.3d 478, 475[1].   The

plaintiff further alleges the jurisdiction of this Court pursuant to the Universal Declaration of

Human Rights as adopted by the United Nations General Assembly on December 10, 1948 in

which the United States of America is a party and in particular all articles therein, including, but

not limited to, the following:

> Article 1: All human beings are born free and equal in dignity and
> rights.  They are endowed with reason and conscience and should
> act towards one another in a spirit of brotherhood.
>
> Article 2: Everyone is entitled to all the rights and freedoms set
> forth in this Declaration, without distinction of any kind, such as
> race, color, sex, language, religion, political or other opinion,
> national or social origin, property, birth or other status.
> Furthermore, no distinction shall be made on the basis of the
> political, jurisdictional or international status of the country or
> territory to which a person belongs, whether it be independent,
> trust, non-self-governing or under any other limitation of
> sovereignty.
>
> Article 3: Everyone has the right to life, liberty and security of
> person.
>
> Article 5: No one shall be subjected to torture or to cruel, inhuman
> or degrading treatment or punishment.
>
> Article 6: Everyone has the right to recognition everywhere as a
> person before the law.
>
> Article 7: All are equal before the law and are entitled without any
> discrimination to equal protection of the law.  All are entitled to
> equal protection against any discrimination in violation of this
> Declaration and against any incitement to such discrimination.
>
> Article 8: Everyone has the right to an effective remedy by the

---

[1] See also, *Resnik v. Coulson*, 17-cv-00676, see also Andrew Denney, <u>Judge Sanctions Heriress' Husband For Bugging Wife's Phone During Divorce</u>, N.Y.L.J., January 8, 2019 at 1 and 9.

competent national tribunals for acts violating the fundamental rights granted him by the Constitution or by law.

Article 9: No one shall be subjected to arbitrary arrest, detention or exile.

Article 10: Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations and of any criminal charge against him.

Article 12: No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence, nor to attacks upon his honor and reputation. Everyone has the right to the protection of the law against such interference or attacks.

Article 16: 1. Men and women of full age, without any limitation due to race, nationality or religion, have the right to marry and to found a family. They are entitled to equal rights as to marriage, during marriage and at its dissolution.

2. Marriage shall be entered into only with the free and full consent of the intending spouses.

3. The family is the natural and fundamental ground unit of society and is entitled to protection by society and the State.

Article 17: 1. Everyone has the right to own property alone as well as in association with others.

2. No one shall be arbitrarily deprived of his property.

Article 18: Everyone has the right to freedom of thought, conscience and religion; this right includes freedom to change his religion or belief, and freedom, either alone or in community with others and in public or private, to manifest his religion or belief in teaching, practice, worship and observance.

Article 19: Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers.

4

Article 22: Everyone, as a member of society, has the right to social security and is entitled to a realization, through national effort and international cooperation and in accordance with the organization and resources of each State, of the economic, social and cultural rights indispensable for his dignity and the free development of his personality.

Article 25: 2.  Motherhood and childhood are entitled to special care and assistance.  All children, whether born in or out of wedlock, shall enjoy the same social protection.

Article 29: 2.  In the exercise of his rights and freedoms, everyone shall be subject only to such limitations as are determined by law solely for the purpose of securing due recognition and respect for the rights and freedoms of others and of meeting the just requirements of morality, public order and the general welfare in a democratic society.

Article 30: Nothing in this Declaration may be interpreted as implying for any State, group or person any right to engage in any activity or to perform any act aimed at the destruction of any of the rights and freedoms set forth herein.

2.      This Court has federal question jurisdiction, pursuant to 28 *U.S.C.* §1331, over claims arising under 42 *U.S.C.* §1983.

3.      Supplemental jurisdiction over plaintiff's state law claims exists pursuant to 28 *U.S.C.* §1367(a).

4.      Plaintiff has complied with the requirements of New York General Municipal Law Section 50-I by serving notices of claim on Nassau County, the Nassau County Police Department, *et. al.* on June 28, 2018, July 24, 2018 and September 11, 2018 and on The County of Suffolk, Suffolk County Police Department, *et. al.* on July 30, 2018 and October 29, 2018, within the time required by New York General Municipal Law Section 50-e.  More than thirty days have elapsed since the service of those notices, and no offer of settlement has been made.

5

5.     At the request of Nassau County, Mrs. D'Amato submitted to hearings pursuant to New York General Municipal Law Section 50-h involving the events concerning September 30, 2017 - October 2, 2017 as referred to hereinafter.  No other hearings have been conducted.

## VENUE

6.     The allegations herein arose in Nassau County, New York and are therefore within this jurisdictional district.  Since the federal courthouse in Central Islip is named after the defendant, former United States Senator Alfonse D'Amato, and, many of the judges in all of the federal districts throughout New York State became Judges as a result of being nominated or recommended for office by him, it is being filed in the United States District Court for the Eastern District of New York, Brooklyn, New York with the expectation that it may have to be transferred to another District within or outside the State at a later time[2].

## JURY DEMAND

7.     Pursuant to the Seventh Amendment of the United States Constitution, plaintiffs request a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

8.     Plaintiff is a United States citizen, and at all relevant times was, and still is, a resident of the County of Nassau, State of New York.

---

[2] In *U.S. v. Brett Schrieber*, Docket No. 07-CR-20-01 the case had to be transferred to Vermont in order to avoid the appearance of impropriety as a result of Mr. D'Amato writing a character letter on behalf of the defendant and having nominated many of the judges sitting in the Eastern District of New York, including, but not limited to, Judges Wexler, Hurley, Seybert and Spatt, all sitting in Central Islip branch of the United States District Court at the time.  The Eastern District of New York in Central Islip acted *sua sponte* at the time to recuse itself.  The case was transferred to Judge Sessions in Vermont, the head of the United States Sentencing Commission at the time.  Mr. Schreiber received a sentence of straight probation.

9.      The Defendant, Alfonse D'Amato is a United States citizen, and at all relevant times was, and still is, a resident of the County of Nassau, State of New York.

10.      The Defendant, Park Strategies, LLC is a parent enterprise pursuant to 18 *U.S.C.* §§1961 *et. seq.*

11.      The law firm of Gassman, Baiamonte, Gruner, P.C. is a professional corporation with offices located at 666 Old Country Road, Suite 800, Garden City, New York, in the County of Nassau, State of New York.

12.      Defendant, Stephen Gassman, Esq. is an attorney duly admitted to practice law before the Courts of the State of New York with his principal place of business located at 666 Old Country Road, Suite 800, Garden City, New York, in the County of Nassau, State of New York.

13.      Defendant, Joshua Gruner, Esq. is an attorney duly admitted to practice law before the Courts of the State of New York with his principal place of business located at 666 Old Country Road, Suite 800, Garden City, New York, in the County of Nassau, State of New York.

14.      The County of Nassau is a municipality, duly organized and existing under and by virtue of the laws of the State of New York, was the employer of the individual police defendants, and is and was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Nassau County Police Department ("NCPD").

15.      Defendant, Nassau County Police Department, was and is a departmental agency of the Defendant, Nassau County.

16.      At all relevant times, Defendant Vincent Adamo, was a duly appointed and acting police officer of the NCPD, acting under color of law and in his individual capacity within the

7

scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the State of New York.

17.     At all relevant times, Defendant Jimmy Lee was a duly appointed and acting police officer of the NCPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the State of New York.

18.     At all relevant times, Defendant James Lorenzen was a duly appointed and acting police officer of the NCPD with the rank of Sergeant, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the State of New York.

19.     At all relevant times, Defendant Frances Bein was a duly appointed and acting police officer of the NCPD with the rank of Deputy Inspector, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Nassau County and the State of New York.

20.     At all relevant times, Jason Hernandez was a duly appointed and acting police officer of the NCPD with the rank of Detective, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of Nassau County and the State of New York.

21.     At all relevant times, Defendant Namdi Odiah, M.D., is a medical doctor who, upon information and belief, is licensed to practice medicine in the State of New York.

22.     At all relevant times, Defendant Richard Murphy is the C.E.O. of South Nassau Communities Hospital located in Nassau County, State of New York.

8

23.     At all relevant times, Defendant, South Nassau Communities Hospital is a private hospital located in Oceanside, Nassau County, State of New York.  It is also the hospital where co-defendants Odiah, Murphy, Kuglar and Reddy are employed and/or associated as of September 30 - October 2, 2017.

24.     At all relevant times, Defendant, Joshua Kuglar, M.D., is a medical doctor who, upon information and belief, is licensed to practice medicine in the State of New York.

25.     At all relevant times, Defendant, Stanley Reddy, M.D., is a medical doctor who, upon information and belief, is licensed to practice medicine in the State of New York.

26.     At all relevant times, Defendant, Mark Green, Esq., is an attorney duly admitted to practice law before the Courts of the State of New York with a principal place of business located at 990 Westbury Road, Suite 202, Westbury, County of Nassau, State of New York.

27.     At all relevant times, Defendant, Patrick Ryder is the Nassau County Police Commissioner.

28.     At all relevant times, Defendant, David Mack is the Nassau County Deputy Police Commissioner.

29.     At all relevant times, the County of Suffolk is a municipality, duly organized and existing under and by virtue of the laws of the State of New York.

30.     At all relevant times, Defendant, James Cash, is a resident of the County of Nassau, residing at 53 Buxton Street, Lido Beach, New York.  He is married to the defendant Catherine Cash and, upon information and belief, a retired New York City fireman.

31.     At all relevant times, Defendant, Catherine Cash, is a resident of the County of Nassau, residing at 53 Buxton Street, Lido Beach, New York.  She is married to the defendant

James Cash and a Suffolk County Police Officer.

32.     At all relevant times, Defendant Honorable Joseph H. Lorintz is a Supreme Court Justice in the County of Nassau and employed by the State of New York.

33.     At all relevant times, Defendant, David Smith, is a resident of the County of Nassau, residing at Roslyn Heights, New York.

34.     At all relevant times, International Investigation Group, Ltd. is a private investigation firm located at 2901 Long Beach Road, Oceanside, New York 11572. Upon information and belief, they are a private limited liability company authorized to do business in the State of New York.

35.     At all relevant times, Defendant Daniel Ribacoff, is the founder and Chief Operating Officer of International Investigation Group (IIG), Ltd.

36.     At all relevant times, upon information and belief, Defendant Lisa Ribacoff is an employed as the Manager and Director of International Investigation Group (IIG), Ltd. and the daughter of Daniel Ribacoff.

37.     At all relevant times Saul Roth was an employee of Defendant, International Investigation Group, Ltd. and acting in such capacity.

38.     At all relevant times, Hon. Madeline Singas was the District Attorney of Nassau County.

39.     At all relevant times Schlissel Ostrow Karabatos, PLLC, is a professional limited liability company law firm located at 200 Garden City Plaza, Suite 301, Garden City, New York 11530, in Nassau County and authorized to do business in the State of New York.

## NOTICES OF CLAIM

40.     That on or about January 30, 2018 plaintiff caused a written Notice of Claim to be

served upon the County of Nassau and the Nassau County Police Department, which said Notice

of Claim set forth the name and post office address of plaintiff herein, the nature of the claim, the

time when, the place where and the manner in which the claim herein sued upon arose and the

item of damages or injuries claimed to have been sustained, so far as then practicable.  The

plaintiff afforded the defendants a 50-h exam under the Municipal Law on November 19, 2018.

Additional notices of claim have been filed against Nassau County on June 28, 2018, July 18,

2018 and September 5, 2018 and against the County of Suffolk on July 30, 2018 and October 22,

2018.

41.     That copies of the said Notices of Claim served as aforesaid are annexed hereto,

made a part hereof and incorporated by reference herein.  (See Exhibit "A")

42.     That at least thirty days have elapsed prior to the commencement of this action

since the service of the Notices of Claim as aforesaid, on the County of Nassau, Nassau County

Police Department and the County of Suffolk and payment thereof has been neglected and/or

refused by the defendants County of Nassau and County of Suffolk.

43.     While Notices of Claim have been filed against Nassau and Suffolk Counties,

they have not yet moved forward since Municipal Law hearings have not yet been held with

respect to those allegations.

## INTRODUCTION

44.     Katuria D'Amato and Alfonse D'Amato have known each other since 1999.  They

signed a pre-nuptial agreement in 2004 and were married soon thereafter.  They have two

11

children from that union, Alfonso, d/o/b: 2/5/08 and Luciana, d/o/b: 10/16/09. This is Mrs. D'Amato's first marriage and Mr. D'Amato's second. She has no other children. He has four children from his first marriage and grandchildren. He is 81 years of age and Mrs. D'Amato is 53 years of age.

45.    Mr. D'Amato is a former three term United States Senator from New York (18 years) having served from 1981-1998. Prior to that time he served as a Supervisor of the Town of Hempstead located in the County of Nassau. Upon leaving the United States Senate in 1999 he established an international lobbying firm known as Park Strategies, LLC. with a principal location as 101 Park Avenue, New York, New York. In addition, he has established other corporate entities and acquired interests in still others operating at that location and elsewhere. He is an attorney. Park Strategies, LLC is also the parent enterprise pursuant to 18 *U.S.C.* §§1961 *et. seq.*

46.    Mrs. D'Amato is an attorney having previously served as a Law Clerk to two (2) federal judges in the State of Washington and in the Southern District of New York. She is a former Associate in the Proskauer, Rose Law Firm in Manhattan and has served as a member of the Board of Zoning Appeals, Town of Hempstead for the past fifteen years. She has also served as In House Counsel to a multi-million dollar national corporation. Prior to September 30, 2017 she was also a full time mother to her two children.

47.    At the end of 2012 Mrs. D'Amato was involved in a very serious car accident. As a result she has undergone fourteen surgeries, the last of which occurred on September 19, 2017. She has not fully recovered and never will. She suffers from chronic pain each day. More surgeries are anticipated. This accident has resulted in a personal injury action pending in

Nassau's Supreme Court. Mr. D'Amato is not a party in that action.

48. Mr. and Mrs. D'Amato have been estranged since the end of 2013 and the beginning of 2014 after Mrs. D'Amato discovered that Mr. D'Amato had forged her name to a bank account at H.S.B.C. in opening it and using it for ten (10) years without her knowledge for campaign contributions and his personal expenses. Mr. D'Amato moved out of the former marital home in January, 2014. He informed Mrs. D'Amato in writing in February, 2014 that he intended to divorce her. Mr. D'Amato purchased his own home two blocks away from the former marital home with both homes being located in Lido Beach, New York. See also 18 *U.S.C.* §§1961 *et. seq.*

49. In May, 2016, Mrs. D'Amato commenced an action under the parties' prenuptial agreement in New York County (*Anonymous v. Anonymous*, Index No. 350037/2016). That case was settled in May, 2017 wherein Mr. D'Amato deeded over the former marital home to Mrs. D'Amato and agreed to pay $5 million dollars to Mrs. D'Amato over the course of the next three years. The action is currently the subject of an enforcement action before Justice Matthew Cooper in New York County Supreme Court.

50. On September 30, 2017 Mrs. D'Amato placed a 911 call to the Nassau County Police Department operator. It was in the early morning hours at about 2 a.m. She called because she believed that an intruder might be trying to gain entry into her home. She had been speaking on the phone with her mother who suggested that she call 911. Mrs. D'Amato's arm was in a sling as a result of her recent surgery. She was also wearing a cape where she was hooked up to an ice machine in order to alleviate the pain from the accident. Mrs. D'Amato has the medical condition known as ADHD. She is legally prescribed Ritalin for that condition. She

does not take pain or other medication.  Her husband and daughter were asleep in a downstairs bedroom.  Her son was not home.

51.     The 911 operator asked Mrs. D'Amato whether there were any weapons in the home.  She answered that there was a shotgun in the home which she had legally purchased three (3) years earlier and which she had never fired or even touched since it was placed far into the back of a closet, key locked and without ammunition.

52.     Mrs. D'Amato's voice is "raspy", of a low octave and breathy due to the surgeries which she has had on her back, spine and throat as a result of the car accident.  Her call with the 911 operator is barely audible.  It lasted thirteen minutes.  At the end of the call she stated several times that police were not needed.  Nonetheless, the 911 operator dispatched police vehicles to her home on a "domestic incident" call.  There was no indication of a domestic incident of any kind during the call.

53.     When the police arrived they barged their way into the home and awakened Mr. D'Amato who told them that his wife is "crazy", that she has a prior psychiatric history, that she takes Lithium for a bi-polar disorder and that she believed that "green lasers" are being shot into the home.  As a result of these falsehoods, Mrs. D'Amato was taken to South Nassau Communities Hospital against her will and where she remained from September 30 - October 2, 2017.  The shotgun was also seized.

54.     Mrs. D'Amato was discharged from the hospital on October 2, 2017 as "not a danger to herself or others."  On October 3, 2017 she commenced a divorce action in New York County against Mr. D'Amato (*Anonymous v. Anonymous*, Index 309600/2017).  He was served at that time.  One of his attorneys, Joshua Gruner, Esq. acknowledged the service on October 4,

2017.  Nonetheless, on October 5, 2017 Mr. D'Amato and his lawyers made an "emergency order

to show cause application" for *ex parte* protective orders.  (*Anonymous v. Anonymous*, Index No.

202477/2017).  Justice Joseph H. Lorintz, a newly elected Supreme Court Justice, signed the *ex*

*parte* orders which gave Mr. D'Amato temporary custody of the children.  Justice Lorintz made

the Order to Show Cause returnable on October 11, 2017.  On October 10, 2017 the parties

appeared before Justice Matthew Cooper in New York County Supreme Court on Mrs.

D'Amato's divorce action.  Justice Cooper transferred just the temporary custody part of Mrs.

D'Amato's action to Nassau County and Justice Lorintz.  Mrs. D'Amato was a plaintiff in the

New York County action and is a defendant in the Nassau action.

55.     On October 11, 2017 Mrs. D'Amato appeared again with her attorney, Joseph

DeSimone, in Nassau County.  Justice Lorintz stated that he was not going to change the *ex parte*

orders of October 5, 2017 and if she wanted to see her children again she would have to agree to

supervised visitation three (3) days per week.  Mrs. D'Amato entered into the Stipulation under

great duress and coercion.

56.     Hearings on temporary custody began in early December, 2017.  As of this date

they still have not been completed.

57.     Mrs. D'Amato retained new counsel on December 11, 2017, Steven Silpe, Esq.,

who remained in the case until approximately December 31, 2017. Mrs. D'Amato's current

counsel, Law Offices of Thomas F. Liotti, LLC entered the case on January 22, 2018 and was

disqualified from representing Mrs. D'Amato in the matrimonial case on October 23, 2018 by the

defendant Lorintz.

58.     Six (6) days of "disqualification hearings" were held throughout 2018.  In

15

addition, the proceedings were further delayed by the Attorney for the Children (hereinafter "AFC") and Mr. D'Amato's counsel asking the Court for a "gag order", seeking to suppress a video of Mr. D'Amato berating his wife in a hospital room eighteen hours after she had neck and spinal surgery.

59.     In the early part of 2018 Mr. Liotti moved for the recusal of Justice Lorintz and the disqualification of the AFC. None of Mrs. D'Amato's applications have been granted. She is now *pro se* in her matrimonial case as of December 3, 2018. She is Of Counsel to Mr. Liotti's law firm; the whole of which has been disqualified. There are approximately ten (10) interlocutory appeals pending in the Appellate Division.

60.     On or about June 5, 2018 Justice Matthew Cooper transferred the remainder of Mrs. D'Amato's New York County action to Nassau on Mr. D'Amato's counsel's change of venue motion. Since that time Justice Lorintz and Mr. D'Amato's counsel have taken little to no action to have the New York County action/file transferred to Nassau[3]. Since it was filed first, the New York County action should have superseded and replaced the Nassau County action but so far that too has not occurred.

61.     On June 25, 2018 neighbors of Mrs. D'Amato, Mr. & Mrs. James Cash, initiated a criminal charge against Mrs. D'Amato claiming that Mr. Cash was "chest bumped" by her. Mrs. D'Amato filed a complaint against Mr. & Mrs. Cash with the Nassau District Attorney's Office on the morning of June 26, 2018 alleging that Mr. & Mrs. Cash had filed a false police report regarding the events of June 25, 2018. When Mrs. D'Amato was arraigned on July 16, 2018 on a

---

[3] In a decision dated February 21, 2019 the defendant Lorintz ordered the consolidation of the two actions but improperly made the plaintiff a defendant in the Nassau divorce action.

charge of harassment as a violation, the Court also entered a protective order against Mrs. D'Amato to "refrain from harassment" of her neighbors, to wit: Mr. & Mrs. Cash and their son. Mrs. D'Amato's counsel advised the arraigning judge that a protective order should not be issued in that it was unnecessary and would be abused by Mr. & Mrs. Cash under Nassau's "zero tolerance policy." Pursuant to that policy any allegations of a violation of a protective order will result in an arrest and a charge of criminal contempt, an A misdemeanor.

62.     Mrs. Cash is a Suffolk County Police Officer. Mr. & Mrs. Cash are friends of Mr. D'Amato and reported to him concerning these events. Mrs. Cash operated under color of law in causing the aforementioned charges to be lodged against Mrs. D'Amato. She and her husband, it is alleged herein, colluded and conspired with Mr. D'Amato to bring about the arrest and charges against Mrs. D'Amato. They used Mrs. Cash's and Mr. D'Amato's influence under color of law to cause these charges to be made together with additional charges on July 31, 2018 wherein they once again reported to Mr. D'Amato and summoned him to the scene.

63.     On July 31, 2018 Mrs. Cash reported a violation of the protective order in that she claimed that she saw Mrs. D'Amato on her property (Mrs. D'Amato's) from Mrs. Cash's third story home adjacent to Mrs. D'Amato's. While Mrs. Cash could not hear Mrs. D'Amato at that distance, she nonetheless falsely claimed a violation of the protective order because she could see Mrs. D'Amato looking at her, giving her "the finger" and mouthing obscenities at her.

64.     Notices of Claim have been filed against Nassau County for the incidents of September 30, 2017 and June 25, 2018 and July 31, 2018. Notices of Claim have also been filed against Suffolk County for the June 25 and July 31, 2018 incidents. More than 30 days have lapsed since the filing of all Notices of Claim.

17

65.     Mrs. D'Amato was arraigned on August 10, 2018 on a charge of Criminal Contempt as a Class "A" misdemeanor regarding the July 31, 2018 incident. Mrs. D'Amato has pled not guilty on both charges. Motions to dismiss are pending in the Nassau District Court. Mrs. D'Amato has commenced a plenary action in New York State Supreme Court, Nassau County against Mr. & Mrs. Cash for their unbridled conduct involving the events of June 25 and July 31, 2018 (*D'Amato v. Cash*, Index No. 60977/2018).

66.     The District Attorney, Hon. Madeline Singas, has abused her discretion by prosecuting the plaintiff, Katuria D'Amato and in not prosecuting James and Catherine Cash for the filing of a false police report on June 25, 2018; for the wrongful prosecution of the plaintiff, Katuria D'Amato on July 16, 2018 and on August 10, 2018 in violation of the plaintiff's Constitutional and other rights and in failing to ask for the appointment of a Special Prosecutor in light of the fact that the co-defendant, Alfonse D'Amato's grandson, Gregory Murphy, is an Assistant District Attorney in her office.

67.     Mrs. D'Amato has the condition known as ADHD with a very high I.Q. Her son has also been diagnosed with ADHD[4] with a very high IQ. Her daughter has been diagnosed with dyslexia. Given her shortened visitation schedule as a result of the wrongfully issued orders of October 5 and October 11, 2017, Mrs. D'Amato has not been able to adequately address these issues through ample diagnostic testing and treatment as needed and as she had planned prior to the events of September 30, 2017.

68.     Mrs. D'Amato on behalf of herself and her children, jointly and severally, makes claims herein against these defendants under the Americans With Disabilities Act of 1990, 42

---

[4] Defined in DSM V as an Attention Deficit Hyperactivity Disorder.

*U.S.C.* ch. 126 §12101 *et. seq.* (hereinafter ADA) The defendants here have failed to accommodate Mrs. D'Amato and her children for these disabilities and as explained more fully herein, have retaliated against them for exercising their Constitutional rights and have specifically exploited these disabilities to their advantage both through the legal process and outside of it.

69.    More specifically, these defendants have failed and neglected to comply with the Mental Hygiene Law of the State of New York and Title II of the ADA.  As a result, they have wrongfully discriminated against the plaintiff and her children.  The plaintiffs have been irreparably damaged as a result of the actions of these defendants, jointly, severally and as co-conspirators.

## FACTS

70.    Defendants, Nassau County Police, unlawfully invaded plaintiff's home on September 30, 2017; seized her personal property and removed her to a hospital against her will on a "mentally aided call" where she was falsely detained for the next three (3) days until released on October 2, 2017.

71.    The defendants, James and Catherine Cash, caused the plaintiff to be improperly charged on June 25, 2018 and to have a protective order illegally entered against her.

72.    The defendant Catherine Cash, a Suffolk County Police Officer then fabricated a claim on July 31, 2018 that the plaintiff had violated the aforesaid protective order and should be charged with Criminal Contempt, a class A misdemeanor, in violation of her (Mrs. D'Amato's) Constitutional rights.  The plaintiff was then falsely arrested, detained and prosecuted all in violation of her Constitutional rights which Nassau County police were ignorant of or in which

19

they conspired with their co-defendants, Mr. & Mrs. Cash and Alfonse D'Amato to violate those

rights.

Systemic Violations at the NCPD:

Custom and Practice of a Failure to Properly Train Police Personnel On the Mental Hygiene
Law, Probable Cause, the Problems Associated With the Fabrication of Evidence in Violating
Constitutional Rights and Committing Perjury

73.     As of September 30, 2017 and before, the NCPD had a flawed custom, policy, or

pattern, guidelines and practice of condoning, facilitating, or promoting the use of

unconstitutional investigative techniques, including cases allegedly involving domestic violence

and/or "mentally aided calls" whereby police officers would illegally enter homes or apartments,

without probable cause or search warrants and take people into custody or removing them to a

hospital in violation of their Constitutional rights, manufacturing false police reports,

"testilying", withholding material exculpatory and impeachment evidence from prosecutors, and

suborning perjury of witnesses and police officers and in failing to properly respond to alleged

domestic incidents, and "mentally aided calls."  In addition, the "zero tolerance" policy is being

illegally applied in the case of alleged violations of protective orders wrongfully issued in

violation cases, thereby causing the false arrests and imprisonment of defendants.

74.     There are numerous other cases involving the NCPD failure to properly respond

to domestic incidents and "mentally aided calls".

a.      NCPD police officers responded to the scene on September 30, 2017 because they

believed, incorrectly, that this was Senator D'Amato's home and that there was at

the time a domestic incident requiring their intervention.  Yet there was no

evidence of a domestic incident.

20

b.  NCPD police officers are inadequately trained on mental health issues and the Constitutional rights of persons even those persons that they believe have mental health issues because not everyone with mental health issues is a danger to themselves or others and the police fail to recognize that or to comply with State and Federal laws requiring such a nexus in order for them to deprive a person of his or her Constitutional rights.

c.  The police officers in this case misconstrued the condition of the plaintiff who has ADHD with some other condition possibly warranting hospitalization.  This was caused by their inadequate training and their incompetence in not protecting the Constitutional rights of persons within their jurisdiction.

Custom and Practice of Failing to Train or Supervise

75.     The NCPD had a custom, policy, or pattern and practice of failing to adequately train, supervise or discipline officers concerning basic interviewing techniques, constitutionally adequate methods for gaining entry into a home when domestic violence and/or a mental health issues are suspected.

76.     The NCPD presumably had written policies, procedures, or guidelines concerning the execution of lawful investigations, Constitutionally adequate procedures for "mentally aided calls" which were subpoenaed and also requested pursuant to New York's Freedom of Information Law but not turned over or released to the plaintiff or her counsel.  The Nassau Police Department and Justice Lorintz both obstructed the disclosure of these documents.

77.     Although Nassau County's final policymakers were aware of the outrageous and pervasive misconduct involving police gaining entry to a home or in taking someone within their

21

custody to a hospital on a mentally aided call, they failed to implement a corrective policy.

78.     The only supervisor that the police had on September 30, 2017 was Deputy

Inspector Bein who arrived after the initial encounter by the police with Mrs. D'Amato and who

then actually or constructively condoned, facilitated, or encouraged their unconstitutional

practices and proceeded to lie about them while under oath.

## ALLEGATIONS

79.     The defendant, Alfonse D'Amato is my husband.  We were married in 2004 and

have two children as a result of the union, Alfonso, age 11 and Luciana, age 9.  Our children

reside in Nassau County and attend a private school there.  My husband's primary business is an

international lobbying firm, Park Strategies, Inc., located at 101 Park Avenue, New York, New

York together with other businesses in which he has an ownership interest at that location and

elsewhere.

80.     My husband and I are presently involved in two divorce actions pending in Nassau

County before co-defendant, Hon. Joseph H. Lorintz, a Justice of the State of New York

Supreme Court.  The two actions are: (1) my action against my husband in New York County

commenced on October 3, 2017 (*Anonymous v. Anonymous*, Index No. 309600/2017) which was

transferred from New York County on June 5, 2018 to Nassau County.  My husband's proposed

answer has not yet been accepted or even acknowledged by *nisi prius* in Nassau County.  My

motion for a default judgment in New York County against him was never decided, and there is a

second divorce action which my husband commenced against me in Nassau County which is

known as *Anonymous v. Anonymous*, Index No. 202477/2017.  I have never answered in that

action and my husband's lawyers have only recently moved to consolidate that action with the

22

New York County action.  They only did so after I moved to dismiss the Nassau County action.

81.     Stephen Gassman and his law firm, Gassman, Baiamonte, Gruner, P.C. are my husband's attorneys in both actions and has been his attorneys since January, 2014 as we attempted to negotiate a separation agreement.

82.     On September 30, 2017 Nassau County Police Officers came to my home after I had called 911 because I believed that an intruder might be trying to break into my home.  During that same 911 call I had advised the dispatcher that police were no longer needed but nonetheless, he sent them.

83.     Upon arriving at my home in Lido Beach, Nassau County, in the early morning hours of September 30, 2017 the police forced their way into my home; awakened my husband; seized my property; and took me to the South Nassau Communities Hospital on a "mentally aided call" in derogation of their own protocols, the New York State Mental Hygiene Law and in violation of my State and Federal civil rights.

84.     On September 30, 2017 I was recovering from surgery I had eleven days earlier on my shoulder as a result of a very serious car accident in which I had been involved in 2012.  With that surgery, I had fourteen surgeries in all relating to that accident.  More surgery may be needed in the future.

85.     I have a medical condition known as ADHD wherein I am prescribed Ritalin which I have taken for many years in accordance with medical advice and doctors' opinions[5].

86.     On September 30, 2017 my husband lied to the police telling them that I have a

---

[5] See also, Robert Brodsky, New ID Cards May Help Those With Disabilities, Identification Could Inform Law Enforcement In Incidents, Newsday, March 10, 2018 at A20 and A21.

prior psychiatric history and that I take Lithium.  Neither statement is true.  I am an attorney with

no prior criminal record.  I have clerked for two federal judges; been an Associate at a major

Manhattan law firm; been in-house counsel to a multi-million dollar a year corporation and I

have served on the Town of Hempstead Board of Zoning Appeals for the past fifteen years.

87.     My husband and I have been estranged since the end of 2013 when I found a bank

account at HSBC in which he had forged my name in opening it and in using it for the previous

ten years for campaign contributions and his personal expenses unbeknownst to me.  The account

had an undisclosed $39 million dollars in it.

88.     Defendant, Alfonse D'Amato informed me in February, 2014 that he planned to

divorce me.

89.     After the discovery of the aforementioned HSBC account in May, 2016, I

instituted a New York County action to enforce the terms of the prenuptial agreement

(*Anonymous v. Anonymous*, Index No. 350037/2016).  That action was settled on May 30, 2017

by Mr. D'Amato agreeing to pay me the sum of $5 million together with the deed to the former

marital residence located at 67 Buxton Street, Lido Beach, New York.  An enforcement action is

still pending in New York County (*Anonymous v. Anonymous*, Index No. 350037/2016)

regarding his alleged breach of that So Ordered Stipulation of Settlement.  See also 18 *U.S.C.*

§§1961 *et. seq.*

## DAMAGES

90.     The actions of the defendants deprived plaintiffs of their civil rights under the

First, Second, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States

Constitution, and the laws of New York.

91.     The unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of the defendants caused Mrs. D'Amato to be falsely taken into custody on a "mentally aided call" against her will; to have her property seized; her right of privacy breached and to be wrongfully detained in a hospital for three (3) days also against her will and in violation of State and Federal laws.

92.     The unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of the defendants caused Mrs. D'Amato and her children the following injuries and damages, which continue to date and will continue into the future; personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of family relationships, including the total loss of relationships with each other; severe psychological damage; damage to reputation and property; loss of income; costs of defense and attorneys' fees; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment and expression, for which they are entitled to monetary relief.

93.     As a direct and proximate result of the acts of the defendants, and the resulting unlawful incarceration of Mrs. D'Amato, plaintiffs Alfonso and Luciana D'Amato suffered pecuniary and non-pecuniary damages in that they were deprived of those benefits one would normally derive from the presence of their mother, Katuria D'Amato.  As the result of their mother's absence, they suffered loss of society, companionship, advice, moral support, family

25

services, attention, protection, parental care, financial support.  They also suffered from mental

anguish, bereavement, and the stigma of being children of a woman who was taken to the

hospital on a "mentally aided call" and who was later arrested and charged with violations of the

Penal Law.

94.     All the acts and omissions committed by the defendants described herein for

which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly,

negligently and/or with bad faith, and said acts meet all of the standards for imposition of

punitive damages.

## CAUSES OF ACTION

## COUNT I

### 42 U.S.C. §1983 4th and 14th Amendment Claims for
### False Arrest, Abuse of Process, Malicious Prosecution[6],
### Selective Prosecution, Vindictive Prosecution and False Imprisonment

95.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and

further allege as follows:

96.     Defendants, despite knowing that probable cause did not exist to enter Mrs.

D'Amato's home and seize her property or remove her therefrom against her will, the defendants,

with malice, acted individually and in concert to cause Mrs. D'Amato's rights to be violated

pursuant to the Fourth and Fourteenth Amendments of the United States Constitution where she

is to be free of unreasonable searches and seizures.

97.     Specifically, defendants intentionally misrepresented facts in a police report of

---

[6] See also Professor Emeritus, Martin A. Schwartz, Section 1983 Litigation, Second
Circuit on "Lanning" Clarifies Malicious Prosecution, N.Y.L.J., March 5, 2019 at 3 and Lanning
v. City of Glen Falls, 908 F.3d 19 (2nd Cir. 2018).

September 30, 2017 relying upon the false statements of Mr. D'Amato that his wife is "crazy", had a prior psychiatric history and takes Lithium.  The defendant police officers and Nassau County performed the above-described acts deliberately, with reckless disregard for the truth and with malice.

98.     In fact, Mrs. D'Amato should not have been taken to the hospital on September 30, 2017 and detained there.  She also should not have been prosecuted concerning events of June 25, 2018 and July 31, 2018.

99.     Defendants' actions to deprive Mrs. D'Amato of her liberty without probable cause were in violation of clearly established constitutional law, including *Franks v. Delaware*, 438 U.S. 154 (1978), and no reasonable police officer in 2017 and 2018 would have believed that the defendants' actions were lawful or that they complied with the Mental Hygiene Law and plaintiff, Mrs. D'Amato's Constitutional rights.

100.     Defendants, under color of law, federal and state, deprived plaintiff, Katuria D'Amato of her Constitutional right to be free from false arrest, false imprisonment, abuse of process, malicious and vindictive prosecution.

101.     The defendants intended to confine the plaintiff in the hospital and jail; Mrs. D'Amato was conscious of the confinement and did not consent to it, and the confinement was not privileged.  The police proceeded in the absence of a warrant or evidence of domestic violence of any kind.

102.     Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS

($50,000,000.00) based on the gross negligence, failure to supervise and train police officers as a

pattern and due to deliberate and excessive acts of force and brutality toward the plaintiff. See,

*Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037

(1978).

## COUNT II

### 42 *U.S.C.* §1983 14th Amendment Claims for Deprivation of Liberty Without Due Process of Law and Denial of Due Process by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence, Coercion and Deliberately Failing to Conduct a Constitutionally Adequate Investigation

103.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and

further allege as follows:

104.     Defendants, Madeline Singas, *et. al.*, acting individually and in concert, withheld

material exculpatory and impeachment evidence from the defense, thereby depriving Mrs.

D'Amato of her clearly established constitutional rights, pursuant to the Fourteenth Amendment.

The prosecution has withheld 911 calls and calls to and from Mr. D'Amato by Mr. & Mrs. Cash

on or about June 25 and July 31, 2018. See, *Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v.

Whitley*, 514 U.S. 419 (1995) and *People v. Rosario*, 9 N.Y.2d 286 (1961).

105.     Because of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).

Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS

($50,000,000.00) based on the gross negligence, failure to supervise and train police officers as a

pattern and due to deliberate and excessive acts of force and brutality toward the plaintiff. See,

*Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037

(1978).

## COUNT III

### 42 *U.S.C.* §1983 Claim for Failure to Intercede

106     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

107.    The defendant police officers, in particular, Deputy Inspector Bein, attorneys named herein, Justice Lorintz, and prosecutors have failed to correct their misstatements, perjury, subornation of perjury and untruths.  Inspector Bein failed to stop the removal of Mrs. D'Amato from her home on September 30, 2017.

108.    Defendants, by their conduct under color of law, federal and state, had opportunities to intercede on behalf of plaintiff, Katuria D'Amato to prevent the excessive use of force and unreasonable, continued seizure but due to intentional and deliberate indifference declined or refused to do so.

109.    In particular, Deputy Inspector Frances Bein, acting as a supervisor on September 30, 2017 was grossly negligent and later committed perjury in lying about the plaintiff's conduct on September 30, 2017 when she testified in December, 2017 during a temporary custody hearing.

110.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) based on the gross negligence, failure to supervise and train police officers as a pattern and due to deliberate and excessive acts of force and brutality toward the plaintiff.  See, *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978).

## COUNT IV

**42 *U.S.C.* §1983 Civil Rights Conspiracy Claim**

111.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

112.    Defendants acting within the scope of their employment and under color of law, agreed among themselves and with other individuals, to act in concert in order to deprive plaintiffs, including Mrs. D'Amato, of her clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, abuse of process, false arrest, false imprisonment, malicious, vindictive and selective prosecution, and deprivation of liberty without due process of law, and to due process in both the Supreme Court and District Court.

113.    Defendants' conspired to deprive Mrs. D'Amato of her basic Constitutional rights.

114.    In furtherance of the conspiracy the defendants engaged in and facilitated numerous overt acts, including, without limitation, to the following:

a.      Defendants Alfonse D'Amato and Nassau Police personnel responding to Mrs. D'Amato's home on September 30, 2017 invaded her home, seized her property and caused her to be taken to a hospital on a "mentally aided call" in violation of her Constitutional rights.

b.      Defendants Alfonse D'Amato, his lawyers, David Smith and his lawyers conspired with the defendant IIG and Lisa Ribacoff to attempt to cause the arrest of Mrs. D'Amato on April 2, 2018.  They were not successful but a retainer agreement with IIG dated March 27, 2018 signed by Mr. D'Amato, his attorneys and IIG more than supports this allegation.

30

    c.      The defendants Alfonse D'Amato, Mr. & Mrs. James Cash, the Nassau County Police Department personnel and its District Attorney of Nassau County agreed to false criminal charges and prosecution of Mrs. D'Amato regarding the events of June 25 and July 31, 2018 as herein described.

    d.      Defendants Alfonse D'Amato, Mark Green, Stephen Gassman, Joshua Gruner and Justice Lorintz have conspired together to deprive Mrs. D'Amato of a fair trial in her matrimonial case by allowing for "gag order" applications, the disqualification of Mrs. D'Amato's counsel, the suppression of evidence and expert testimony.

115.    As a direct and proximate result of the defendants' conspiracy and actions in furtherance of that conspiracy, Mrs. D'Amato was wrongly removed from her home and taken to a "psych" ward of the defendant hospital where she was held against her will for three (3) days; wrongfully prosecuted for the events of June 25 and July 31, 2018, all in violation of her Constitutional rights to due process of law.

116.    Defendants, under color of federal and state law, conspired with one another to deprive Plaintiff of her constitutional rights, including the rights to be free from intentional use of unreasonable force; to associate and speak freely; to be protected while in custody; to not be subjected to cruel and unusual punishment; to be free from false arrest, and malicious prosecution and by fabricating and contriving purported misconduct by Plaintiff in order to attempt to justify Defendant Police officers', prosecutors' and co-defendants' actions.

117.    The defendants, jointly and severally under color of state law subjected and caused the plaintiffs in this jurisdiction to be deprived rights, privileges and immunities secured by the Constitution of the United States and federal laws.

31

118.    As part of the conspiracy, Defendants, through the actions of Defendant Police

officers, as well as all defendants hereinafter named

      a.     Fabricated and contrived stories about the plaintiff; and

      b.     Concealed, discarded and/or otherwise withheld evidence and statements to
            insulate officers from administrative and criminal sanctions; and

      c.     Violated Plaintiff's rights, privileges and immunities as guaranteed under
            the United States Constitution, under 42 U.S.C. § 1983 and under the
            Constitution and laws of the State of New York; and

      d.     Deliberately suppressed the truth about their misconduct.

119.    Because of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).

Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS

($50,000,000.00) based on the gross negligence, failure to supervise and train police officers as a

pattern and due to deliberate and excessive acts of force and brutality toward the plaintiff.  See,

*Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037

(1978).

**COUNT V**

**42 *U.S.C.* §1983 Supervisory Liability Claim**

120.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and

further allege as follows:

121.    The individual defendant police officers acted with impunity in an environment in

which they were not properly trained, supervised, or disciplined by the Nassau County Police

32

Department.

122.    Nassau Police Department defendants were personally involved in the deprivation of plaintiff's constitutional rights as they acted with gross negligence, recklessness, and/or deliberate indifference to the Constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the defendant police officers, and thereby caused the individual defendant police officers to deprive Mrs. D'Amato of her clearly established constitutional rights, including her rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, abuse of process, malicious vindictive and selective prosecution and deprivation of liberty without due process of law, and to fair hearings and trials despite actual or constructive knowledge that such Constitutional violations were occurring or had occurred.  Had Nassau police defendants not provided grossly inadequate training, supervision, and discipline of the defendant officers, defendants would not have invaded Mrs. D'Amato's home; seized her property; taken her to the defendant hospital against her will or caused her to be arrested, charged and prosecuted without probable cause.

123.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) based on the gross negligence, failure to supervise and train police officers as a pattern and due to deliberate and excessive acts of force and brutality toward the plaintiff.  See, *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978).

## COUNT VI

**42 *U.S.C.* §1983 *Monell* Claim Against Nassau County;
Unconstitutional Custom and Practice of Conducting Unlawful
Investigations and Failing to Train and Supervise**

124.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

125.    Nassau County, by and through the deliberate indifference of its final policymakers, maintained a custom, policy, or practice of not complying with the Mental Hygiene Law of the State of New York on domestic violence and "mentally aided calls"; a failure to exercise proper discretion by not prosecuting some cases while failing to prosecute others; committing and suborning perjury with actual and constructive notice that these grievous Constitutional violations were occurring.

126.    As a direct result of Nassau County's unconstitutional policies and practices of conducting Constitutionally inadequate investigations and providing grossly inadequate mechanisms for training, supervision, and discipline, the individual defendants in this case caused Mrs. D'Amato to be deprived of her Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, abuse of process, vindictive prosecution and deprivation of liberty without due process of law, and to a fair hearing and trial, and directly and proximately caused the other grievous and continuing injuries and damages set forth herein.

127.    The issuance of protective orders in violation cases and a "zero tolerance policy" where those orders may then be abused as they were in this case is a violation of both State and Federal Constitutional rights.

34

128.    The defendants by a pattern of neglect, malfeasance, and nonfeasance have illegally, unnecessarily, wantonly and wilfully caused the Plaintiff to be wrongfully detained and through an abuse of process; to be illegally touched, assaulted, battered and falsely imprisoned by violating her civil rights and brutalizing them; by negligent hiring, training and supervision.

129.    The defendants have shown a deliberate pattern of violating the rights of persons within their domain and jurisdiction.

130.    In doing the above the defendants have violated their oaths of office and their fiduciary duties.

131.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT VII

**42 *U.S.C.* §1983 1st and 14th Amendment Loss of Familial Association Claim**

132.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

133.    Defendants, through their misconduct against Mrs. D'Amato, recklessly or deliberately violated her and her children's First and Fourteenth Amendment rights to be free from unwarranted government interference with their familial relationship without due process of law.

134.    These acts caused Mrs. D'Amato and her children to suffer the damages and irreparable harm, both short and long term set forth herein.

35

135.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT VIII

### State Law False Arrest, Abuse of Process, Malicious, Vindictive and Selective Prosecution, and False Imprisonment Claims

136.    Plaintiffs hereby incorporated by reference all of the foregoing paragraphs and further allege as follows:

137.    Defendants, despite knowing that probable cause did not exist to arrest, charge, and prosecute Mrs. D'Amato on September 30, 2017, June 25, 2017 and July 31, 2018 intentionally, recklessly and with malice caused Mrs. D'Amato to be arrested, charged and taken to a "psych ward" on September 30, 2017 and wrongfully charged on June 25 and July 31, 2018.

138.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT IX

### State Law Claims for Assault and Battery

139.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

140.    In removing her from her home on September 30, 2017 and bringing her to a hospital, where she was lab tested, all against her will, and when she was charged and detained

36

with respect to the events of June 25 and July 31, 2019 the defendant police officers intentionally assaulted and battered Mrs. D'Amato.

141.    As a direct and proximate result of this misconduct and unwarranted use of force, Mrs. D'Amato sustained the injuries and damages set forth herein including fear, anxiety and apprehension of exacerbation of pre-existing and other assaults and batteries.

142.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT X

### State Law Claim for Intentional or Reckless Infliction of Emotional Distress

143.    Plaintiffs hereby incorporated by reference all of the foregoing paragraphs and further allege as follows:

144.    The conduct of defendants in deliberately causing, or recklessly disregarding the risk of causing, the wrongful arrest, prosecution, and incarceration of Mrs. D'Amato was extreme and outrageous, and directly and proximately caused the grievous and continuing injuries and damages set forth above.

145.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XI

### State Law Claim for Negligent Infliction of Emotional Distress

146.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

147.    The defendants negligently and with gross negligence, and in breach of their duties owed to her to refrain from fabricating evidence, coercing witnesses, withholding material exculpatory and impeachment evidence, and otherwise acting to deny her due process of law, directly and proximately caused Mrs. D'Amato, an innocent woman, to be falsely arrested, maliciously prosecuted, and wrongfully imprisoned for a total of three (3) hours on July 16, 2018 and four (4) hours on August 10, 2018.  Defendants' actions caused Mrs. D'Amato to suffer physical harm, including physical ailments resulting from the circumstances and duration of her wrongful incarceration, and to fear for her physical safety throughout the period and exacerbation of her pre-existing injury stemming from her accident in 2012 and being taken from her ice machine on September 30, 2017 which caused her excruciating pain.

148.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XII

### State Law Respondeat Superior Claim Against Nassau County

149.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

150.    At all times relevant to this complaint the individual defendant police officers and Detectives acted as agents of, and in the scope of their employment with Nassau County.  The conduct by which defendants committed the torts of false arrest, malicious prosecution, false imprisonment, assault and battery, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress were undertaken while defendants were on duty, carrying out their routine investigative functions as NCPD detectives or officers, and engaging in such conduct as would have been reasonably expected by their employer.  Indeed, the specific conduct of defendants and their fellow officers was known by, should have been known by, and/or was reasonably foreseeable to NCPD supervisors.

151.    Nassau County is liable for its agents' state law torts of false arrest, malicious prosecution, vindictive prosecution, abuse of process, false imprisonment, assault and battery, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress under the doctrine of *respondeat superior*.

152.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XIII

### State Law Negligent Supervision Claim

153.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

154.    Defendant Patrick Ryder, Nassau County Police Department Commissioner, was

grossly negligent and negligent in the training, supervision, and discipline of defendants Nassau County Police Department police officers and detectives particularly with respect to "mentally aided calls" and proper discretion in the charging function.

155.    Defendant Commissioner Patrick Ryder knew or, but for his grossly negligent and negligent training, supervision, and discipline, should have known that defendants the Nassau County Police Department officers and detectives herein named engaged in investigative misconduct including fabricating evidence, and failing to document and disclose material exculpatory and impeachment evidence, and that they thereby caused Mrs. D'Amato to be maliciously prosecuted and falsely arrested and taken from her home.

156.    As a proximate result of the gross negligence and negligence of defendant, Ryder, NCPD defendants engaged in the previously set forth misconduct and caused the above-described acts of false arrest, abuse of process, malicious prosecution, selective prosecution, false imprisonment, assault and battery, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress inflicted on Mrs. D'Amato, which directly and proximately caused her to sustain grievous and continuing injuries and damages set forth herein, including, but not limited to, wrongfully charging the plaintiff for the events of June 25, 2018 and July 31, 2018.

157.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XIV

### Negligence and Denial of Civil Rights

158.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

159.    On September 30, 2017 at approximately 2:00 a.m. the plaintiff believed that an intruder might be trying to gain entrance to her home located at 67 Buxton Street, Lido Beach, New York and as a result, called 911.

160.    During that 911 call she was asked by the operator whether there were any guns in the home.  She answered truthfully that there was a shotgun in the home which she had legally purchased three or four years earlier and which was still in the box in which she had purchased it and noting that she had never fired it or had even taken it out of the box.  The gun was key locked.  Ammunition and the key were located elsewhere in the home but were not near or with the shotgun.

161.    At the time of the call Mr. D'Amato and their daughter were asleep downstairs on the second floor.  The plaintiff was on the third floor. Since the home is located near the Atlantic Ocean, it is elevated.  The first floor consists of a garage, some utilities and storage space.

162.    The 911 call lasted thirteen minutes and plaintiff repeatedly told the operator that police were not needed but the operator dispatched the police there anyway.  There was no indication of any domestic dispute at the time of the call or when the police arrived at the home.

163.    When the police arrived, the plaintiff again told them that their presence was not needed.

164.    Nonetheless, police barged into the house without a warrant or probable cause to

believe that a crime was being committed therein or that any Domestic Violence was occurring.

165.   Officer Vincent Adamo, a defendant herein, took the lead, repeatedly and loudly inquiring of the plaintiff: "Where's the Senator, where's Al?"  The plaintiff pleaded with him to keep his voice down as her daughter and husband were both asleep together in a second floor, back bedroom.  Nonetheless, Police Officer Adamo continued to walk about the second floor bellowing his same inquiry and finally waking Mr. D'Amato, albeit not Luciana.

166.   Mr. D'Amato then spoke to the police telling them that his wife is "crazy", that she believes that "green lasers were being shot into the home;" "that listening devices were being placed in the house by him"; "that she has a prior psychiatric history" and that "she takes Lithium for a bipolar disorder."  None of these statements by Mr. D'Amato were true but were relied upon by the police.

167.   Mrs. D'Amato lead the police to the shotgun which as she had said to the operator was still in a box in the back of a closet and key locked.  It was taken and seized by the police over her objection.

168.   Mrs. D'Amato was then taken on September 30, 2017, against her will, to the South Nassau Communities Hospital on a "mentally aided call".

169.   In taking her to the hospital and seizing the shotgun the police failed to comply with the Constitutions of New York State and the United States.  In addition, they failed to comply with New York State's Mental Hygiene Law and upon information and belief, with their own protocols and guidelines which they have failed to disclose in violation of a court order and New York's Freedom of Information Law.

170.   The police searched her home in violation of the Fourth Amendment and the

42

United States Constitution and analogous provisions under the New York State Constitution and seized personal property illegally, belonging to her without her consent and having no right to do so. See, *Mapp v. Ohio*, 367 U.S. 643 (1961). See also, New York State Civil Rights Law §8, Bill of Rights.

171.    The actions of the police under the aforementioned circumstances amounted to an unlawful taking of personal property; an illegal search and seizure, which property has still not been returned to the plaintiff and notwithstanding her legal ownership of that personal property, to wit: a shotgun, a receipt for the gun was wrongfully given by the police to her husband as a non-owner and who has still not returned the receipt to the plaintiff. The gun continues to be wrongfully withheld from plaintiff by the police.

172.    The actions by the police under the circumstances amounted to an illegal arrest, kidnaping, false imprisonment, larceny, assault, battery, negligence, defamation and burglary.

173.    The police had a duty to follow the law including, but not limited to, the New York State Mental Hygiene Law and both the New York State and federal Constitutions. They had a duty not to invade the privacy of the plaintiff or to breach her quiet enjoyment. They had a duty to protect and safeguard the plaintiff but instead allowed Mr. D'Amato to manipulate them placing undue credibility on him when in fact the plaintiff had not threatened anyone and was not a danger to herself or others.

174.    The plaintiffs' experts will attest to the fact that the police failed to comply with the State's Mental Hygiene Law and their own protocols on September 30, 2017.

175.    The police breached their duty to the plaintiff, Mrs. D'Amato. As a result the plaintiff was unwarrantedly taken from her home, held in a hospital for three (3) days against her

43

will without due process of law and thereafter on October 5, 2017 lost temporary custody of her

children to the defendant, Alfonse D'Amato, and had other unwarranted protective orders entered

against her. The defendants breached their duties to these plaintiffs under color of law and

thereby proximately caused these serious damages.

176.    The plaintiff was not a danger to herself or others prior to September 30, 2017, on

that day, at any time prior to it, or at any time thereafter.

177.    As a direct, proximate consequence of the police misconduct and negligence, the

plaintiff was severely damaged for which she is entitled to both compensatory and punitive

damages.

178.    The plaintiff is a private person but her husband Alfonse D'Amato, is a public

figure who used his influence to have the plaintiff taken into police custody by telling the police

that she was "crazy"; that "she was taking pictures of lasers coming into the house on his phone".

179.    Given the fact that the plaintiff was physically vulnerable and in extreme pain

from surgery that she had eleven days earlier, Mr. D'Amato fabricated the aforementioned lies in

preying upon the plaintiff, convincing the police that she was a danger to him and her children

because there was an unused shotgun in the house. He told these lies and others in order to gain

a tactical advantage over his wife in the matrimonial case.

180.    Mr. D'Amato is an attorney, a skilled political lobbyist who knows how to abuse

the system to his advantage.

181.    After stating these lies and others to the police, Mr. D'Amato then made a number

of false statements to the police such as "please don't take her" and "take me instead", knowing

that these statements would fool the police in furthering their misperception that he needed to be

protected from the plaintiff because if she was "crazy" as he had falsely represented to them, he was underestimating the potential danger to himself.  Mr. D'Amato knew exactly what he was doing.

182.    The police failed to realize that Mr. D'Amato, a highly skilled politician and attorney, was manipulating them by showing off his own alleged vulnerability and professed love of his wife while in reality he planned to use this ruse against the plaintiff in the matrimonial and custody proceedings which he planned to commence the following week in his favored venue of Nassau County.

183.    In essence, he tricked the police and they fell for it.

184.    The police had a duty to protect this plaintiff from harm and to insure that her civil rights were not violated but breached their duty to her and as a result proximately caused severe damage to her and her children all under color of law.

185.    The police failed to use ordinary care and were grossly negligent in their actions toward the plaintiff.

186.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XV

### Medical Malpractice

187.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

188.    In taking the plaintiff to South Nassau Communities Hospital on a "mentally aided call" the hospital had no records or information available to them but knew that under New York's Mental Hygiene Law that they could keep the plaintiff for up to 48 hours for observation purposes in order to avoid possible liability for themselves if she was in fact a danger to herself or others. Specifically and among other things, they violated HIPPA laws and the ADA by not inquiring of the police as to why Mrs. D'Amato was being brought to the hospital.

189.    The defendant Joshua Kuglar, M.D. was the head of the Emergency Room at South Nassau Communities Hospital who failed to make a proper assessment or evaluation of the plaintiff pursuant to the Mental Hygiene Law prior to admitting her or holding her against her will until October 2, 2017.

190.    The defendant hospital is responsible for the neglect and malpractice of its physicians under the legal doctrine of *respondeat superior*. The hospital is vicariously liable for the actions of its employees, physicians and subordinates.

191.    Stanley Reddy, M.D. was the head of the Psychiatric and Behavior Department at South Nassau Communities Hospital. He neglected and failed to have any contact with plaintiff during her entire stay there and, upon information and belief, together with other physicians and hospital personnel contributed to the falsifying of medical records pertaining to the plaintiff's stay in the hospital from September 30, 2017 to October 2, 2017.

192.    The plaintiff and her counsel have consulted with a physician who has verified the malpractice and neglect of the hospital and its physicians including, but not limited to, Namdi Odiah, M.D. who failed to make a proper diagnosis or treat the plaintiff from September 30 through October 2, 2017.

46

193.     The hospital and its physicians failed to immediately discharge the plaintiff on September 30, 2017 as not a danger to herself or others which is what they ultimately determined on October 2, 2017 after keeping her for more than two (2) days and 48 hours against her will.

194.     Mr. D'Amato represents the hospital and met with its CEO, co-defendant Richard Murphy, just prior to September 30, 2017.  On September 30, 2017 Mr. D'Amato called Mr. Murphy.  Upon information and belief, Mr. D'Amato asked Mr. Murphy to detain her in the hospital until at least October 2, 2017 so that Mr. D'Amato could meet with his attorneys the following day in order to commence his matrimonial and custody proceedings.

195.     Upon information and belief, Defendant, Alfonse D'Amato discussed his wife's medical condition with Mr. Murphy in violation of the HIPPA laws relative to confidentiality, yet another violation of the law.

196.     The hospital and its physicians made a gross misdiagnosis of Mrs. D'Amato in that, among other things, they failed to recognize or even inquire about whether she had the medical condition known as ADHD and accordingly also violated the ADA.

197.     The actions of the hospital, Mr. Murphy and its physicians represented a departure from customary medical practices and procedures in the community.

198.     But for the negligence and medical malpractice of the hospital and its physicians, the result would have been different in that they failed to appropriately and professionally interact with the police as to why the plaintiff was even brought to the hospital in the first place and why she should be admitted or detained in the hospital and not immediately discharged from it.

199.     As a result of this alleged malpractice on the part of the hospital and its personnel the Court on October 5, 2017 improperly entered *ex parte* protective orders against the plaintiff

and gave temporary custody to the defendant, Alfonse D'Amato, of the couple's two minor children.

200.    As a result of the maltreatment, misdiagnosis or no treatment, examination or proper evaluation of the plaintiff, she and her children have been separated for the past seventeen months as a result of the fraudulently prepared police reports and medical records which the Court erroneously and in error relied upon on October 5, 2017; October 10, 2017 and October 11, 2017.

201.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XVI

### Defamation

202.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

203.    The incorrect actions and perjurious statements by the police, Mr. D'Amato, the hospital and its personnel, all contributed to the false impression that the plaintiff was "psychotic" on September 30, 2017 and thereby defamed her both in Court and in media accounts.

204.    The incorrect actions and misstatements by these defendants defamed the plaintiff *per se* in her trade and profession and deprived her of parental and civil rights.

205.    On October 2, 2017 instead of following normal procedure for the obtaining of a police report Mr. D'Amato was able to secure an uncertified copy of a report from his friend and

co-defendant, Deputy Police Commissioner David Mack.

206.     Upon information and belief, Mr. D'Amato did not have to fill out an application,

wait for its receipt in the mail, or pay a customary fee that all others would have to do in

requesting a police report.

207.     Upon information and belief, Mr. D'Amato and David Mack conspired together in

compiling and issuing a false and defamatory police report which was then used by Mr.

D'Amato's attorneys to secure temporary custody for him by offering it in Court as evidence of

Mrs. D'Amato's non-existent psychosis and that she was taking "Lithium" and "Oxycodone"

which they knew to be false and which would then be reported in the media, further leading to

the misimpression of Mrs. D'Amato throughout her divorce and custody case, defaming her and

causing irreparable harm and damage to her and her children.

208.     The police report, unsigned and not certified provided for the following erroneous

and defamatory account of September 30, 2017 allegedly being written by Police Officer Adamo:

> Reporting Officer did respond for a possible domestic incident at
> the above location.  Upon arrival Aided apparently was suffering
> from a psychotic episode.  Aided does have a previous psyche
> history stated that she was afraid of her husband and that men were
> trying to break into her house.  Aided also stated that there were
> people in the house shining green lasers at her and were attempting
> to place listening devices in the house.  Aided was apparently
> suffering hallucinations and does take the medications lithium and
> oxycodone.  It was determined that Mr. D'Amato was asleep when
> officers arrived.  Police woke Mr. D'Amato who was asleep in the
> bedroom.  Upon further investigation a 20 gauge Mossberg Pump
> shotgun, serial #U742617 was recovered from the house which
> Aided did purchase without her husband's knowledge.  Said
> weapon was taken for safety reasons and invoiced.  Tag number
> 907.  Receipt was issued to Mr. D'Amato.  Aided was transported
> to South Nassau Communities Hospital via NCPD ambulance
> #2364 for further evaluation and treatment.  Deputy Inspector Bein

and Patrol Supervisor Lorenzen were both present at scene.

209.     The report falsely stated that there was a possible "domestic incident". There was none.  The remainder of the false information contained in the report was given to the police by Mr. D'Amato and not the plaintiff.  Among other things, the plaintiff has never been prescribed Lithium, has no "psyche history" and had not taken oxycodone.  Lab reports from the hospital at that time substantiated these facts.  The shotgun was legally purchased and had not been touched or used since then.  It was key locked and the ammunition was in a separate location also with a key which was in yet another location.  Mr. D'Amato did not own the gun or the home at 67 Buxton Street, Lido Beach, New York.  He was not entitled to receive the receipt and the police failed to inquire as to whether this was a marital home and Mr. D'Amato's status in it.  The police failed to inquire of Mr. or Mrs. D'Amato as to whether there was any "domestic incident" occurring at the scene on September 30, 2017 which might warrant further action by them but instead they found Mr. D'Amato and their daughter sound asleep at the time with no evidence of a "domestic incident."

210.     Mr. D'Amato improperly used his influence to create a misimpression of the plaintiff by a poorly trained and unqualified Police Officer Adamo who failed to see through Mr. D'Amato's ulterior motives in wanting to use this false information against his wife in his matrimonial action in Nassau County.  Once determining that there was no evidence of a "domestic incident" after awakening Mr. D'Amato, the police had a further duty to leave the premises.

211.     Nassau County, its Police Department, Police Commissioner Patrick Ryder and Deputy Police Commissioner David Mack are all jointly and severally responsible for the actions

of the police on September 30, 2017 and for the issuance of a false police report based upon the
fabrications and lies as told to them by Mr. D'Amato.

212.    Nassau County and the police defendants named herein furthered their
misconduct, negligence, defamation and false reporting when they testified falsely in Court in
early December, 2017 at the behest of Mr. D'Amato and his attorneys wherein they amplified
those same erroneous facts, including, but not limited to, the following *in hac verba* statements
by each defendant as specified in the following cause of action.

213.    Because of the foregoing, Plaintiffs have been damaged in an amount to be
determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).
Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS
($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XVII

### Defamation and Subornation of Perjury
### Against Alfonse D'Amato; Gassman, Baiamonte and Gruner, P.C.;
### Stephen Gassman and Joshua Gruner, all individually, jointly and severally

214.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and
further allege as follows:

215.    On October 2, 2017 the plaintiff was discharged from the hospital as "not a danger
to herself or others."

216.    On October 3, 2017 the plaintiff commenced a divorce action against Mr.
D'Amato in New York County under Index No. 309600/2017.  Mr. D'Amato was then served.
His attorneys, by Joshua Gruner, then acknowledged service on October 4, 2017.

217.    Notwithstanding the aforementioned, the law firm defendants, Gassman,

Baiamonte, Gruner, P.C., filed a divorce action in Nassau County under Index No. 202477/2017 together with an *ex parte* Order to Show Cause requesting temporary custody in Mr. D'Amato and a Temporary Restraining, Protective Order against Mrs. D'Amato barring her from having any contact with her children and Mr. D'Amato, the school which the children attend; requiring Mrs. D'Amato to undergo psychiatric testing, among other things.

218.    The defendant law firm, Gassman, Baiamonte, Gruner, P.C. and its principals, the defendants, Gassman and Gruner, prepared the divorce action and *ex parte* papers stating that no other divorce actions were pending and had their client, an attorney, also verify the truth of those matters stated therein, all knowing full well that a New York County divorce action had already been commenced two (2) days earlier by the plaintiff.  The preparation of those papers and Mr. D'Amato swearing under oath to their truthfulness was perjury and subornation of perjury.

219.    The perjury and subornation of it did not, however, end there because in making their oral arguments before the defendant, Hon. Joseph H. Lorintz on October 5, 2017, the defendants once again misrepresented material facts in open Court.  They included, but were not limited to, the following in words and substance:

> a.    "That they did not know the whereabouts of the shotgun although they knew it was still in police custody and that Mr. D'Amato had the receipt for it"; and
>
> b.    "That Mrs. D'Amato had a prior psychiatric history and that she was taking lithium," knowing both statements to be false and also knowing that Justice Lorintz would rely upon them and that they would be reported in

the media[7], portraying Mrs. D'Amato in a bad light and taint the remainder of the litigation against her; and

c.      "That they could not notify Mrs. D'Amato or her attorney of their *ex parte* applications because they were unaware of her psychological state and that she might become violent toward Mr. D'Amato and her children if she learned of the *ex parte* applications" all the while knowing that Mrs. D'Amato had never threatened anyone; also knowing that she had been discharged from the hospital on October 2, 2017 as not a danger to herself or others; and also knowing that she had the wherewithal to see an attorney by October 3, 2017 in order to commence the New York County divorce action in a lawful and legal manner; and

d.      "Falsely told the Court that the plaintiff was caught by the police loading the shotgun", knowing that the statement was patently false and not even included in the police report or anything told to Mr. D'Amato by the police or that he had witnessed, and also knowing that Mrs. D'Amato was physically incapable of loading a shotgun at the time due to her surgery and the fact that one of her arm was in a sling on September 30, 2017."

As to the Defendant, Alfonse D'Amato

a.      "I soon learned that the defendant took other medication that I had never known about - Lithium - a well known drug prescribed for individuals suffering from a bi-polar disorder."  See par. 10 of defendant's affidavit

---

[7] The courtroom is open to the public and the media has closely followed the case.

for an *ex parte* order dated October 4, 2017.

b.  "Even more shocking, the officers advised that upon their arrival, the defendant had been attempting to load her shotgun." See par. 11, *supra*.

c.  "[Defendant] does have a previous psych history . . .". Statement made by defendant, D'Amato to police and incorporated into their report. Par. 13 *supra*.

d.  "That Mrs. D'Amato was taking lithium and oxycodone." Statement made by defendant D'Amato to the police and incorporated into their report. Par. 13 *supra*.

e.  "Furthermore, prior to this incident, I had no knowledge that the defendant owned a pump shotgun which she kept in our home nor was I aware of the Defendant's psych history and use of Lithium for bipolar disorder. To my knowledge, the above described incident represents the defendant's first psychotic episode." Par. 14 *supra*. The defendant deeded over the home at 67 Buxton Street, Lido Beach to his wife as the exclusive owner as of June, 2017. Thus, it was no longer "our" home.

As to the Defendant, Stephen Gassman, Esq.

a.  ". . . the safety of the parties children will be placed at risk if they remain under the supervision of the defendant/mother. The father's account of the mother's psychotic episode is completely corroborated by the Nassau County Police Case Report." P. 1, par. 3 of Mr. Gassman's affirmation dated October 4, 2017 in support of the *ex parte* applications.

54

b. "The defendant possessed a pump shotgun in the marital residence for an unknown period of time without the plaintiff's knowledge or consent. Upon information and belief, she attempted to load said weapon in the middle of the night while the plaintiff and the parties' daughter slept. She contacted the police department because she hallucinated green lasers coming into the house. According to the Nassau Police Department, the defendant hallucinated green lasers coming into the home during a psychotic episode. The 'episode' caused the Nassau County Police Officers at the house, including a Deputy Inspector and Patrol Supervisor, insisted that the defendant be taken to the hospital for a psychiatric evaluation." As per a Stipulation of Settlement on May 30, 2017 (4 months prior to September 30, 2017) 67 Buxton Street, Lido Beach was no longer the "marital home."

c. "Being given notice that the plaintiff intended to have the children removed from her home will most certainly cause the defendant to become upset, angry and desperate. Neither the plaintiff nor the parties' children should be left unprotected prior to the request being submitted."

d. "The defendant has only been one day removed from being released from the hospital. Her current mental state is unknown. It is unknown whether she has additional weapons in the residence or elsewhere at her disposal."

e. "Financially, the defendant has the ability to abscond with the children in order to take the children away from the plaintiff and outside the

jurisdiction of this Court."

f.    "Considering the safety and welfare of the parties' interest is at stake, the request that the within motion be submitted without notice is fair and reasonable under the circumstances."

g.    "The case before this Court involved an incident described by the plaintiff, and corroborated by a police report, detailing a 'psychotic episode' suffered by the defendant in the middle of the night. Clearly, the fact that said episode also included a deadly weapon, the defendant's unknown mental state and psychological history renders this an emergency."

h.    "All relief sought herein relates to the physical safety and well-being of two young children and the parties. There is no financial incentive for plaintiff to commence this proceeding as virtually all economic issues between the parties have been resolved by prior agreements."

As to the Defendant Joshua B. Gruner, Esq.

a.    "Okay, Judge. First - - the first - - to your first question. This past weekend, as you may have seen from the application, the anonymous, my client's wife, anonymous two, contacted the police. Only after the police were brought to the home at 2:00 a.m. did we discover - - my client discover that his wife had in her possession a shotgun which, as the police were entering the home, she was attempting to load. My client did not even know and the police report bears that out that the shotgun was in the house."

56

"Second, we learned - - my client learned for the first time that his wife

was taking Lithium.  That was not a factor where he was aware of.  And

more importantly, as described by the police officers in their report, which

is Exhibit C of our motion, my client's wife apparently suffered a

psychotic episode in the home while he and the children slept.  She was

taken by the police to the hospital and upon information and belief

released on late Monday afternoon."  Mr. Gruner failed to advise the Court

that his client lied to the police and that he, Police Officer Adamo and

defendant Mack had prepared a false report.

"We are unaware of her current mental condition.  We only know that she

has had access to at least one rifle or weapon that we were not aware of,

and it's very possible there are more.  She also has available to her

sufficient funds where she could either abscond by herself or with the

parties' children."

"We feel that if she had been given notice, we don't know what that would

have done to her mental state, A, and B, what steps she might have taken

either with another weapon or with the money or some other danger to - -

to impose danger to herself, my client or more importantly the parties'

children."

"Which I think also answers the second question, which our concern is

that we don't - - we are unaware of her current mental state, and we know

that she had access to the weapon.  We do not know if the police

57

department returned the weapon to her or if she has other weapons at her
disposal either in the marital residence or elsewhere."

"Obviously, Judge, the use by the police officer of the term psychotic
episode is very disturbing and concerning. The fact that she called the
police because she saw green lasers around the house caused the officers,
while my client was sleeping in fact, to contact an ambulance and have her
taken to the hospital for a psych evaluation." His client did not call the
ambulance or 911. This is another patent falsehood.

220.    The defendants knew that these statements were false; that they would be reported
in the media; that the Judge hearing their legal arguments was newly elected; that he could rely
upon them and due to his inexperience not make a probing inquiry as to their veracity and as a
result Mrs. D'Amato has been separated from her children and their activities and embroiled in
protracted legal proceedings in State court which would have been unnecessary but for the
improper conduct of these defendants. In addition, the defendants' Cash falsely stated that Mrs.
D'Amato "chest bumped" Mr. Cash on June 25, 2018 and that she violated a protective order on
July 31, 2018 knowing that these false reports would be made to the media and further embarrass
and defame Mrs. D'Amato which then occurred in various news accounts.

221.    Because of the foregoing, Plaintiffs have been damaged in an amount to be
determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).
Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS
($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XVIII

### Against Hon. Joseph H. Lorintz

222.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

223.     Justice Lorintz's actions in this case were *ultra vires* because he acted without jurisdiction in that a divorce action had already been commenced in New York County and because Mrs. D'Amato and her attorneys had not been served with legal papers; they never consented to the jurisdiction of the Nassau Court and the plaintiff has still not "answered".  Issue has not been joined.

224.     Due to his judicial inexperience, Justice Lorintz has improperly arrogated power to himself which he does not have.

225.     Far worse than that, however, is the fact that Mr. D'Amato's attorneys, the AFC, Mark Green, Esq.; the forensic psychologist, both appointed by the Court, all financially contributed to the Justice's 2016 campaign for the position which he now holds and Mr. D'Amato played an active role in engineering his cross-endorsement so that voters had no choice and had to elect him.  Justice Lorintz had run unsuccessfully three times before 2016 without cross-endorsements.

226.     Lorintz's actions were a *per se* violation of the Canons of Judicial Ethics and created a gross appearance of impropriety yet he refused to recuse himself and to disqualify the AFC and forensic psychologist notwithstanding numerous requests that he do so.

227.     Justice Lorintz improperly and illegally issued *ex parte* orders on the basis of false information provided to him by Mr. D'Amato and his lawyers; obstructed justice; improperly

suppressed evidence and conspired with these defendants to deprive Mrs. D'Amato of her parental and Constitutional rights.

228.    Neither Mr. D'Amato's lawyers nor Justice Lorintz have attempted to correct the record as required by the Code of Professional Responsibility.

229.    Since his first involvement in this case on October 5, 2017, Justice Lorintz has acted with  unwarranted bias and prejudice toward the plaintiff all because of the untoward influence of Mr. D'Amato, his attorneys and the AFC.

230.    The plaintiff has tried, without success, to move the Nassau matrimonial case to another County and Justice.  Notwithstanding glaring conflicts of interest Justice Lorintz has declined to recuse himself.

231.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XIX

### Against Mark Green, Esq.

232.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

233.    Since his appointment in the matrimonial case in or about October 5, 2017 Mr. Green has acted as an antagonist to the plaintiff and her children.

234.    Mr. Green also contributed to the Justice's campaign in 2016; has failed to comply with the Standards for AFCs in New York State; has applied for "gag orders" against the

plaintiff; has moved for disqualification of the plaintiff's counsel in the matrimonial proceeding; and has opposed the testimony and reports of two of this plaintiff's experts in the underlying matrimonial case. None of Mr. Green's actions were in the best interests of Mrs. D'Amato's children.

235.    Mr. Green's fees and those of the forensic psychologist are being paid by Mr. D'Amato. This creates a proprietary conflict on his part which has caused him to agree with every legal argument offered by Mr. D'Amato's counsel. Not once has he presented a legal position or argument favoring the plaintiff and her children.

236.    The plaintiff has moved for his disqualification in the Nassau County matrimonial case which has also been denied by Justice Lorintz. This decision and many others are the subject of interlocutory appeals pending in the Appellate Division, Second Judicial Department. These appeals do not address the plaintiffs' claims here of a denial or violations of their civil rights.

237.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XX

### 42 U.S.C. §1983 - Unreasonable and Excessive Force

238.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

239.    Defendants, by the conduct of Police officers, under color of law, federal and state,

deprived Katuria D'Amato of her Constitutional right to be free from excessive and unreasonable force.

240.    The conduct of the Defendants toward Katuria D'Amato constituted assault and battery upon the person of Katuria D'Amato by Defendant Police officers.

241.    This conduct was intentionally, recklessly and negligently directed at the plaintiff by Defendants, through the illegal actions of Police officers, acting individually and within the scope of their employment, performed while Police officers were on duty under color of state and federal law. The police defendants under color of law intentionally and negligently invaded the plaintiff's privacy and interfered with her person and property. In addition, they falsely prosecuted the plaintiff, Katuria D'Amato regarding the events of June 25, 2018 and July 31, 2018.

242.    Katuria D'Amato has been damaged and suffered severe bodily injury, necessitating immediate and ongoing medical treatment, emotional distress, humiliation and conscious pain and suffering as a result of the intentional, reckless and negligent acts of Defendants.

243.    The aforementioned occurrence was caused by the wrongful, careless, reckless, negligent and intentional acts of the Defendants. Such conduct violated Katuria D'Amato's rights, privileges and immunities as guaranteed by the U.S. Constitution, Amendments One, Two, Four, Five, Six, Eight and Fourteen, under 42 U.S.C. § 1983 and under the laws and Constitution of the State of New York.

244.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, plaintiff seeks punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

62

## COUNT XXI

### 42 U.S.C. §1983 - Failure to Protect Plaintiff While in Custody

245.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

246.    Defendants, by their conduct under color of law, federal and state, acting with malicious and/or deliberate indifference in failing to recognize that the plaintiff had recently undergone surgery and that her arm was in a sling because of it and that she was using an ice machine to alleviate her pain.  By taking her to the defendant hospital on September 30, 2017 on a mentally aided call and in falsely charging her on June 25 and July 31, 2018 they deprived her of her Constitutional rights and perpetuated and exacerbated her physical and mental pain and suffering.

247.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXII

### 42 U.S.C. §1983 - Eighth and Fourteenth Amendment Violations

248.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

249.    By their conduct and under color of law, federal and state, Defendants deprived Plaintiff of her Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment with respect to September 30 - October 2, 2017 and July 16, 2018 (arraignment date

for the June 25, 2018 incident) and August 10, 2018 (arraignment date for July 31, 2018 incident) and November 7, 2018.

250.     The Defendants engaged in a cover-up in order to conceal the wrongdoing and unlawful conduct taken against Plaintiff, and the Defendants' efforts to conceal the occurrence continues to the detriment of Plaintiff and her children, forcing her into protracted, expensive litigation, public ridicule and embarrassment.

251.     Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXIII

### Pendent Claim of Gross Negligence, Negligence and Intentional and Negligent Infliction of Emotional Distress

252.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

253.     Defendants, The Nassau County Police Department, Nassau County Police Officer Vincent Adamo; Nassau County Police Officer Jimmy Lee; Nassau County Police Sgt. James Lorenzen; Nassau County Police Deputy Inspector Frances Bein; Patrick Ryder, Nassau County Police Commissioner; Detective Jason Hernandez and David Mack, Nassau County Deputy Police Commissioner, were grossly negligent in the conduct of their obligations to safeguard plaintiff and Police officers were negligent, grossly negligent and egregious in their individual and official capacities as members of the NCPD while Plaintiff was in their custody and in failing to take steps that an ordinary, reasonable and prudent person and/or officer would have pursued to care for and

protect Plaintiff.

254.    The Defendants engaged in a cover-up in order to conceal the wrongdoing and unlawful conduct taken against Plaintiff, and the Defendants' efforts to conceal the occurrence continues to the detriment of Plaintiff.  The cover-up included, but is not limited to, the filing of false police report; testifying falsely against the plaintiff in December, 2017 and in failing to comply with "FOIL" and So Ordered Subpoenas for their records relative to the incidents of September 30, 2017 and CPL §240.20 Demands regarding the incidents of June 25, 2018 and July 31, 2018.  See also, *Brady v. Maryland*, 373 U.S. 83 (1963).

255.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXIV

### Pendent Claim - Respondeat Superior

256.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

257.    At all relevant times, Defendants/police officers, Detectives and Inspectors were acting for, upon and in furtherance of the business of their employer and within the scope of their employment.

258.    Consequently, Defendant, Nassau County and its Police Department are liable under the doctrine of *respondeat superior* for the tortuous actions of Defendant Police officers and Nassau County Police Department employees.

259.     Because of the foregoing, Plaintiffs have been damaged in an amount to be
determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).
Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS
($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXV

### Pendent Claim - Assault and Battery

260.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and
further allege as follows:

261.     By their actions, all Defendants, by Police officers, committed acts of assault and
battery upon plaintiff, Katuria D'Amato, which included fear that if she resisted being taken to the
hospital that she would be physically forced to go there against her will, handcuffed and restrained
and fear of it while in custody of the Defendants, which physical force was unnecessary and
excessive.

262.     The Defendants engaged in a cover-up in order to conceal the wrongdoing and
unlawful conduct taken against plaintiff, Katuria D'Amato.

263.     Because of the foregoing, Plaintiffs have been damaged in an amount to be
determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).
Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS
($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXVI

### Pendent Claim - Prima Facie Tort

264.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and

further allege as follows:

265.    By their actions, as set forth above, Police officers and personnel, inflicted harm on Plaintiff, Katuria D'Amato, without justification, out of disinterested malevolence.

266.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXVII

### Pendent Claim - Negligent Hiring, Training and Supervision

267.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

268.    At the time of the incidents described herein, the Defendant Police officers and personnel were in the employ of and acting as agents for Defendants County of Nassau and/or Nassau County Police Department, as per the above allegations.

269.    Defendant Police officers had been hired and trained by Defendants Nassau County and/or Nassau County Police Department for the position of Police Officer.

270.    As employees and agents for Defendant, Nassau County and/or Nassau County Police Department, Defendant Police officers were at all times under the supervision of Defendants, Nassau County and/or Nassau County Police Department.

271.    Upon information and belief, Defendants Nassau County and/or Nassau County Police Department hired and trained Defendant Police officers with disregard for propensities for violent and abusive activity toward and disregard of civil rights of individuals, as evidenced by the

actions set forth herein.

272.   Upon information and belief, Police officers had propensities for violent and abusive activity toward and disregard of civil rights of individuals, as evidenced by the wrongful taking of the plaintiff to the defendant hospital, their failure to comply with the State Mental Hygiene Law and other actions as set forth herein.

273.   Upon information and belief, Nassau County and/or Nassau County Police Department employees, including, but not limited to Police officers, had propensities for failing to protect and defend the Constitutional rights and civil liberties of the plaintiff, as evidenced by other incidents known to Defendants Nassau County and/or Nassau County Police Department.

274.   Defendants Nassau County and/or Nassau County Police Department breached their duty to the public and the Plaintiffs specifically by either intentionally or negligently hiring Police officers possessed of such propensities for illegal activity, violence, abuse and disregard of civil rights.

275.   Defendants Nassau County and/or Nassau County Police Department breached their duty to the public and the Plaintiffs specifically by deploying Police officers without first properly screening the hiring of and training of them.

276.   Defendants Nassau County and/or Nassau Police Department breached their duty to the public and the Plaintiffs specifically by failing to properly supervise Defendant Police officers not to commit acts of abuse and violence toward, and disregard for, civil rights of the public and individuals in their custody.

277.   Defendants Nassau County and/or Nassau County Police Department breached their duty to the public and the Plaintiffs specifically by failing to properly supervise, and in retaining employees despite knowledge of and exhibition of abusive and violent propensities and disregard

for civil rights of the public and individuals in their custody or under their control.

278.    Plaintiff, Katuria D'Amato, has been damaged and suffered severe bodily injury and the plaintiff has and continues to have emotional distress and conscious pain and suffering in violation of her civil rights.

279.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

### COUNT XXVIII

**Plaintiff Alleges Violations of New York**
**State Judiciary Law §487 by the Attorney**
**Defendants and Law Firms Herein Named**

280.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

281.    The attorney defendants herein named are Alfonse D'Amato; Madeline Singas; Mark Green; Stephen Gassman; Joshua Gruner; the Law Firm of Gassman, Baiamonte and Gruner, P.C.; Schlissel, Ostrow & Karabatos  and Joseph H. Lorintz, an attorney and Supreme Court Justice.

282.    In taking their oaths as attorneys these defendants as specified herein have sworn to uphold, protect and defend the Constitution of the United States and to comply with the New York Code of Professional Responsibility but have failed in their obligations to do so.  See also, Anita Bernstein and John Crain, Here's a Good Judiciary Law §487 Question for the Second Circuit to Certify in Beunkhoun, N.Y.L.J., December 3, 2018 and Particularity Pleading for Judiciary Law §487 Complaints that Allege Attorney Deceit, N.Y.L.J., January 31, 2019 at 4 and 8.

283. The deceit herein alleged in both material and relied upon by the co-defendants, including the police officers, hospital as well as its physicians and personnel and Justice Lorintz as herein named. *ACA Financial Guaranty v. Goldman Sachs & Co.*, 25 N.Y.3d 1043 1044 (2015) and *Weinberg v. Sultan*, 142 A.D.3d 767, 769 (1st Dept. 2016).

284. The misrepresentation, fraud, deceit, breach of trust, violations of Plaintiff's HIPPA protections and undue influence included lies as told to the police by defendant Alfonse D'Amato on September 30, 2017, namely that the plaintiff had a prior psychiatric history; that she was taking Lithium for a bipolar disorder; that she is "crazy" and that she believed that green lasers were being shot into the house at 67 Buxton Street, Lido Beach, New York. At the time these and other statements were made by Mr. D'Amato he knew that they were untrue and that the police, hospital and its personnel would rely upon them. These misstatements of material facts were fraudulent and deceitful. They and other falsehoods were restated to the Supreme court on October 5, 2017 and October 11, 2017 including, but not limited to, that the plaintiff was loading a shotgun when police arrived at the home on September 30, 2017; that no other legal actions were pending; that they did not know of the whereabouts or status of the shotgun; that they were unaware of the plaintiff's mental state and that the plaintiff might become violent if she or her attorneys were notified of the *ex parte* applications for protective orders that they were making on October 5, 2017. CPLR §3016(b) and Weinstein, Korn and Miller CPLR Manual 19.09(b). See also, *Pludeman v. Northern Leasing Sys.*, 10 N.Y.3d 486 (2008); *Sargiss v. Magarelli*, 909 N.E.2d 573 (2009) and *Armstrong v. Blank Rome*, N.Y. Sup. 2014 WL 912263 at 1.

285. As a result of these misstatements, falsehoods, deceit and fraudulent conduct on the part of these defendants, the plaintiff was caused to be taken from her home against her will and thereafter wrongfully detained in the defendant hospital from September 30, 2017 to October 2,

70

2017; exacerbating her pre-existing personal injuries, causing extreme pain, suffering, intentional infliction of emotional distress and public humiliation.

286.    In addition to these ongoing and recurring injuries the plaintiff has been subjected to the enforcement of illegally entered *ex parte* orders of October 5, 2017 and a So Ordered Stipulation of October 11, 2017 which she was coerced into signing due to Justice Lorintz stating that he did not intend to vacate, modify or dismiss the *ex parte* orders of October 5, 2017 and that the plaintiff would be precluded from seeing her children unless she agreed to the So Ordered Stipulation of October 11, 2017.

287.    These actions by these defendants have caused a violation of the plaintiff's civil and parental rights and have also caused irreparable and permanent injuries, both physically and emotional, to the plaintiff and her children.

288.    Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS ($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXIX

### Against James and Catherine Cash

289.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

290.    Upon information and belief, James and Catherine Cash, husband and wife, conspired with Alfonse D'Amato and the defendants, Nassau County, the Nassau County Police Department and its members, police officers and Detectives caused Mrs. D'Amato to be falsely

charged with respect to events occurring on June 25 and July 31, 2018. Mrs. & Mrs. James Cash acted under color of law in that she is a Suffolk County Police Officer and used her status as such to cause criminal charges to be made against Mrs. D'Amato on June 25 and July 31, 2018. As a result of the false and fabricated charges a protective order (do not harass order) was entered against Mrs. D'Amato on July 16, 2018 which was then abused by the defendants to cause the unlawful arrest and prosecution of Mrs. D'Amato on July 31 - August 10, 2018 through the present.

291.    While Mrs. D'Amato filed a complaint against Mr. & Mrs. Cash with the Nassau District Attorney's Office on June 26, 2018 alleging that the defendants had filed a false and bogus police report on June 25, 2018, a Class A misdemeanor, the District Attorney's office failed to prosecute Mr. & Mrs. Cash but instead persisted in their prosecution of Mrs. D'Amato causing her to be publicly ridiculed, embarrassed, defamed and having to incur legal fees with other costs and expenses.

292.    Mrs. Cash used her status as a Suffolk County Police Officer and Mr. D'Amato acting separately and in concert with each other used influence and titles to secure the wrongful charging, arrest and prosecution of Mrs. D'Amato on June 25, 2018 and July 31, 2018, with arraignments of those charges on July 16 and August 10, 2018 respectively.

293.    Suffolk County and its Police Department are named herein because they have allowed and permitted Catherine Cash to use and abuse her title as a police officer and thereby caused bogus, fabricated and totally fraudulent criminal charges to be made against Mrs. D'Amato without any repercussions to her and in violation of Mrs. D'Amato's Constitutional rights.

294.    Madeline Singas, the Nassau County District Attorney has been named as a defendant pursuant to the legal doctrine of *respondeat superior* and vicarious liability for her

72

negligence in that  she allowed her staff to abuse their discretion in prosecuting Mrs. D'Amato and

not acting on her complaint against Mrs. & Mrs. Cash, contrary to the law, facts and in violation of

Mrs. D'Amato's Constitutional rights.

295.    Upon information and belief, Madeline Singas, with knowledge of these underlying

facts approved of the ongoing, illegal prosecution of Mrs. D'Amato.  In doing so, she acted

intentionally, recklessly, arbitrarily and capriciously.

296.    Because of the foregoing, Plaintiffs have been damaged in an amount to be

determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).

Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS

($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXX

### Against David Smith; International Investigation Group, LLC,
### Daniel Ribacoff, Lisa Ribacoff, Saul Roth and Schlissel Ostrow Karabatos PLLC

297.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and

further allege as follows:

298.    David Smith is the husband of Susanne Gold Smith, a former matrimonial client of

the Law Offices of Thomas F. Liotti, LLC.  It is alleged herein that Mr. Smith conspired with the

defendant Alfonse D'Amato and the International Investigation Group, Inc., its principals, Daniel

Ribacoff and Lisa Ribacoff to surveil, harass, stalk and promote the arrest of the plaintiff, Katuria

D'Amato on or about March 27 - April 2, 2018 as well as before and after those dates.  It is further

alleged that the co-defendants, David Smith and Alfonse D'Amato sought to and did in fact

alienate and tortiously interfere with the retainer and contracts for legal services between Susanne

Gold Smith and the Law Offices of Thomas F. Liotti, LLC and further tampered with her (Ms.

73

Gold) as a witness for the plaintiff, Katuria D'Amato, in her temporary custody hearings and offered Mrs. Gold Smith emoluments and other consideration if she would approach Mrs. D'Amato to suggest that she terminate the services of Mr. Liotti in October, 2018. Mrs. Gold Smith carried that message forward to Mrs. D'Amato before and while she was in the hospital then stating to Mrs. D'Amato, "what would it take for you to fire Tom Liotti," which words and substance were suggested to Mrs. Gold Smith both indirectly by Mr. Smith using Mr. D'Amato as his messenger who was involved in extensive conversations with Mr. Smith, his attorneys concerning these efforts by him. Mr. D'Amato is an attorney and his communications with a represented party, namely Susanne Gold Smith and his abuse of her in this manner is, at the very least, a violation of the Code of Professional Responsibility, Rule 4.2 if not an egregious violation of the Penal Law.

299.   It is further alleged that Daniel and Lisa Ribacoff were owners, principals and/or employees of the defendant, International Investigation Group, Inc. (IIG) and acted in concert with other defendants named herein.

300.   It is further alleged that Saul Roth was employed by IIG on April 2, 2018 at which time he surveiled Mrs. D'Amato and tried to have her arrested on that date and at other times.

301.   Mr. D'Amato's attorneys, the co-defendants herein, Gassman, Baiamonte, Gruner, P.C. were aware of these and other actions by IIG, Mr. Smith and Mr. D'Amato and were conspiring with Mr. Smith's attorneys, Schlissel, Ostrow and Karabatos, Esqs. to cause these events to occur.

302.   Because of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00). Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS

($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

## COUNT XXXI

### Scheme To Defraud and Civil RICO

303.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

304.    These defendants as alleged herein have engaged in an ongoing and malicious campaign of harassment of the plaintiff and her children in violation of their Constitutional and other rights referred to herein.

305.    The defendant Alfonse D'Amato, individually and by and through his corporate entities, including but not limited to, Park Strategies, LLC, an enterprise as noted herein and a lobbying firm which he has used as one of his conduits for campaign contributions to elected officials and judicial candidates and which he uses as a vehicle wherein he asserts his power and influence as a former United States Senator to engineer the endorsements of judicial candidates and did so in this case of the defendant, Justice Joseph H. Lorintz.

306.    The defendant, Alfonse D'Amato, has a long history of extensive and ongoing ties with  organized crime figures and racketeers.  See, Pathway to Power: How LI's Cozy Political System Propelled Gary Melius From Street Tough to Wheeler-Dealer, Newsday, February 25, 2018 and  Newsday Editorial, August 21, 2015, A Disturbing Expose of Patronage Politics.

307.    The predicate acts as engaged in, include but are not limited to, Park Strategies, LLC, the enterprise as referred to herein and its employees, as directed by its founder and owner, Alfonse D'Amato, fraudulently opening and operating the aforementioned HSBC account and forging Mrs. D'Amato's name to it, without her knowledge or consent.  The account had $39

million dollars in it which Mr. D'Amato used for personal expenses and campaign contributions. Mr. D'Amato's actions were in the nature of crimes and therefore predicate acts as provided for in the Racketeer Influenced and Corrupt Organizations Act, 18 *U.S.C.* §1964.

308.     Additional predicate acts include, but are not limited to, Mr. D'Amato lying to the police defendants herein named and intentionally making misrepresentations of material facts as suborned by his attorneys on October 5, 2017 (see, *supra, Anonymous v. Anonymous*, Nassau County Supreme Court Index No. 202477/2017); October 10, 2017 (see, *supra, Anonymous v. Anonymous*, Nassau County Supreme Court Index No. 202477/2017) and October 11, 2017 (see, *supra, Anonymous v. Anonymous*, Nassau County Supreme Court Index No. 202477/2017) which have deprived Mrs. D'Amato and her children of their Constitutional and parental rights.

309.     These misrepresentations by Mr. D'Amato and his attorneys were relied upon by the police defendants herein named, by the defendant Justice Lorintz in Nassau County, Justice Matthew Cooper in New York County and the Appellate Division, Second Judicial Department.

310.     Upon information and belief, Mr. D'Amato has used the aforementioned HSBC account and other accounts to launder money from some of his clients; to conceal their identities, the purposes for which he is retained and the *quid pro quos* that he seeks in return for the campaign contributions that he makes.

311.     Additional predicate acts by Mr. D'Amato, include but are not limited to, he and Mr. David Smith conspiring together to tamper with Mrs. D'Amato's witnesses, including Mrs. Gold Smith, as herein alleged.  As previously alleged, upon information and belief, this conspiracy was also joined by the Gassman, Baiamonte and Gruner, P.C. law firm and the law firm of Schlissel, Ostrow and Karabatos, PLLC.  The conspiracy included the thwarted plan,

joined in by IIG to have Mrs. D'Amato arrested on April 2, 2018.

312.    As a direct result of these and other actions by the defendants and in particular,
Alfonse D'Amato, the plaintiffs are entitled to treble damages and Mr. D'Amato should be
required to divest himself of any interest, direct or indirect, in Park Strategies, LLC and related
entities with the same or similar purposes and otherwise used for the illegal purpose herein
described; and further Mr. D'Amato should be required to cease and desist from forging Mrs.
D'Amato's name to anything including bank accounts or using her name without her consent;
and he should be required and prohibited from engaging in the same or similar enterprise which
has as its purpose the legal bribery of public officials and members of the judiciary by the use of
campaign contributions in return for access, favorable rulings or legislation and his *quid pro quo*.

313.    Because of the foregoing, Plaintiffs have been damaged in an amount to be
determined at trial, believed to be in excess of FIFTY MILLION DOLLARS ($50,000,000.00).
Additionally, Plaintiffs seek punitive damages in the amount of FIFTY MILLION DOLLARS
($50,000,000.00) plus pre and post judgment interest, costs, disbursements and attorneys' fees.

**WHEREFORE,** Plaintiffs request the following relief jointly and severally as against all of
the Defendants and with respect to each count jointly and severally:

1.    That the Court award compensatory damages to them and against defendants,
jointly and severally, in the amount to be determined at trial but in the approximate amount of
FIFTY MILLION DOLLARS ($50,000,000.00) to be requested plus treble damages;

2.    That the Court award punitive damages to them, and against all individual
defendants, in the amount to be determined at trial, that will deter such conduct by defendants in
the future but in the approximate amount of FIFTY MILLION DOLLARS ($50,000,000.00) to be

requested plus treble damages;

      3.      For a trial by jury;

      4.      For pre-judgment and post-judgment interest and recovery of their costs, including

reasonable attorneys' fees pursuant to 42 *U.S.C.* §1988 for all 42 *U.S.C.* §§1981, 1983 and

1985(1)(2) and (3) claims; and

      5.      For such other and further relief as the court deems just and proper.

DATED:      Garden City, New York
                  March 11, 2019

                               LAW OFFICES OF THOMAS F. LIOTTI, LLC
                               BY:    THOMAS F. LIOTTI, ESQ.
                               Attorneys for Plaintiffs
                               600 Old Country Road, Suite 530
                               Garden City, New York 11530
                               (516) 794-4700